IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>HARRISON ULRICH JACK, GENERAL VANG PAO, LO CHA THAO, LO THAO YOUA TRUE VANG, HUE VANG, CHONG YANG THAO, SENG VUE, CHUE LO, NHIA KAO VANG, and DANG VANG,<br><br>　　　　Defendants.<br>_____/ | No. CR.S-07-0266 FCD<br><br>ORDER RE DEFENDANTS'<br>MOTION FOR DISCLOSURE<br>OF GOVERNMENT COMPUTER<br>SEARCH METHODOLOGY |

On December 16, 2008, this matter came before the undersigned for hearing on defendants' motion for an order requiring the government to provide the defense with a detailed summary of its search methodology. (Doc. No. 331.) Assistant United States Attorneys Bob Twiss, Ellen Endrizzi, Jill Thomas and Robert Tice-Raskin appeared on behalf of the United States. Federal Defender Daniel Broderick and Assistant Federal Defender Ben Galloway appeared on behalf of defendant Harrison Jack; attorneys John Balazs and Galia

1

Phillips appeared on behalf of defendant General Vang Pao; attorney Mark Reichel appeared on behalf of defendant Lo Cha Thao; attorney William Portanova appeared on behalf of defendant Lo Thao; attorneys Jim Brosnahan, Raj Chatterjee and Nate Torres appeared on behalf of defendant Youa True Vang; attorney Krista Hart appeared on behalf of defendant Hue Vang; attorney Dina Santos appeared on behalf of defendant Chong Yang Thao; attorney Michael Bigelow appeared on behalf of defendant Seng Vue; attorney Shari Rusk appeared on behalf of defendant Chue Lo; attorney Dan Brace appeared on behalf of defendant Nhia Kao Vang; and attorney Hayes Gable appeared on behalf of defendant Dang Vang.

Attorney Michael Bigelow argued this motion on behalf of all defendants and Assistant United States Attorney Ellen Endrizzi argued for the government. For the reasons set forth below, the motion is denied.

**ANALYSIS**

Defendants seek an order requiring the government to provide the defense with a detailed summary of its search methodology, including, but not limited to the scope of the search, keyword searches, distinctive words and phrases and combinations of word and phrases utilized in the search of the computer hard-drives and other electronic storage devices obtained by the government in the investigation of this case as well as requiring that the defense obtain all data recovered by the government with the identification of each computer hard-drive or electronic storage device searched. Defendants contend that as a result of various search warrants

executed in this case, a total of twenty computers and assorted electronic storage devices were seized. Through this motion, while raising concerns regarding possible overbroad execution of the search warrants, defendants seek disclosure of the search methodology employed by the government in combing through the information contained on the seized computers and storage devices including the keyword search terms employed and the fruits of those searches.

In their opposition to the motion, the government, as a courtesy, summarizes the search protocol it followed in searching the imaged copies of the seized computers and electronic storage media. That protocol described by the government was multi-layered and involved use of a taint team, made up of agents other than the primary case agents, to minimize the review by investigating agents of stored documents not authorized for seizure under the search warrants. The government acknowledges that it utilized key words and phrases and search terms in initially culling through the stored information so as to conserve resources, but declines to divulge those terms to the defense because they are protected work product. The government points out that all the computers and storage media seized pursuant to warrant have been "mirror-imaged" and the computers, storage devices as well as the mirror image copies have been returned to or provided to the defense. The government also argues that binding Ninth Circuit authority provides that where there is probable cause to search a computer or electronic storage device for evidence, executing agents may review all of the contents to identify those documents that are subject to seizure. Finally, at the hearing on the motion, the

government addressed any remaining concerns regarding its continued possession of material that fell outside the scope of the warrant by offering to lodge such material under seal with the court.

The court is persuaded by the government's arguments in this regard. On the other hand, the court finds unpersuasive the defendants' attempts to minimize the importance of observation made by the Ninth Circuit in the recent decision in United States v. Giberson, 527 F.3d 882 (9th Cir. 2008). Rather, the undersigned finds the comments of the Ninth Circuit in that case to fully support the denial of defendants' motion. In Giberson the court rejected the defendant's challenge to the search of a mirror image of the hard drive seized from his computer pursuant to warrant and observed as follows:

> Giberson's principal argument is that computers are able to store massive quantities of intangible, digitally stored information, distinguishing them from ordinary storage containers. But neither the quantity of information, nor the form in which it is stored, is legally relevant in the Fourth Amendment context. While it is true that computers can store a large amount of material, there is no reason why officers should be permitted to search a room full of filing cabinets or even a person's library for documents listed in a warrant but should not be able to search a computer. Giberson's purported exception would also create problems in analyzing devices with similar storage capacities. If we permit cassette tapes to be searched, then do we permit CDs, even though they hold more information? If we do not permit computers to be searched, what about a USB flash drive or other external storage device? Giberson's purported exception provides no answers to these questions.
>
> Similarly, attempting to limit Fourth Amendment searches based on the format of stored information would be arbitrary. We have already held that microcassettes, which store data differently from

traditional paper, are seizable in a search for records. See Gomez-Soto, 723 F.2d at 652. There is no reason why material stored digitally on a computer should not also be searchable. Once again, Giberson's purported exception generates more questions than answers: If we permit a person's Day-Timer to be searched, what about one's BlackBerry? The format of a record or document should not be dispositive to a Fourth Amendment inquiry.

Giberson's purported rule creates a brightline exception to the Fourth Amendment that provides no principles by which to evaluate whether a search is reasonable. The Supreme Court has consistently eschewed such brightline rules. See Ohio v. Robinette, 519 U.S. 33, 39, 117 S. Ct. 417, 136 L.Ed.2d 347 (1996). Here, the only principle upon which we can anchor this analysis is the one already articulated by this court: that to search a container, it must be reasonable to expect that the items enumerated in the search warrant could be found therein. If it is reasonable to believe that a computer contains items enumerated in the warrant, officers may search it.

* * *

Giberson offers two other bases upon which to distinguish computers from other objects in the Fourth Amendment context. First, he argues that computers have a great potential for the intermingling of relevant and irrelevant (and personal and private) material. Indeed, a court has recognized that [b]ecause computers can hold so much information touching on many different areas of a person's life, there is a greater potential for the intermingling of documents and a consequent invasion of privacy when police execute a search for evidence on a computer. United States v. Walser, 275 F.3d 981, 986 (10th Cir.2001). However, we have already rejected this reasoning in Adjani, when we pointed out that [t]he fear that agents searching a computer may come across ... personal information cannot alone serve as the basis for excluding evidence of criminal acts. [United States v. Adjani,] 452 F.3d [1140] at 1152 n. 9 [(9th Cir.), cert. denied __U.S.__, 127 S. Ct. 568 (2006)]. While officers ought to exercise caution when executing the search of a computer, just as they ought to when

5

sifting through documents that may contain personal information, the potential intermingling of materials does not justify an exception or heightened procedural protections for computers beyond the Fourth Amendment's reasonableness requirement.

\* \* \*

Giberson also argues that the evidence obtained from the search of his computer should have been suppressed because the government did not sufficiently limit its search to relevant documents. The second warrant authorized the government to search Giberson's computer for records relating to I.D. cards or the creation of those cards, including driver's licenses, state identification cards, state seals, and photographs that could be used for fake I.D.s. Giberson argues that computer specialist Rehms should have limited his search to files likely to contain those documents, and vaguely asserts that Rehms could have done so by looking at the computer's directories instead of sorting files through ILOOK.

Giberson's argument is foreclosed by [United States v.] Hill[, 459 F.3d 966 (9th Cir. 2006)]. There, the defendant argued that a search of his computer files should have been limited to files likely to be associated with those identified in the search warrant. Hill, 459 F.3d at 977. We rejected that argument, reasoning that the defendant's methodology was unreasonable, because:

> Computer records are extremely susceptible to tampering, hiding, or destruction, whether deliberate or inadvertent. Images can be hidden in all manner of files, even word processing documents and spreadsheets. Criminals will do all they can to conceal contraband, including the simple expedient of changing the names and extensions of files to disguise their content from the casual observer.

Id. at 978 (internal quotation marks and citation omitted); see also Adjani, 452 F.3d at 1150(Computer files are easy to disguise or rename, and were we to limit the warrant to such a escape discovery simply because of [the specific

6

search protocol, much evidence could defendant's] labeling of the files documenting [his] criminal activity. The government should not be required to trust the suspect's self-labeling when executing a warrant.")

This argument applies with equal force to Giberson's case. The records for which the government was authorized to search, including images of the Nevada State Seal and photographs that might be used to create fake I.D.s, could have been graphics files. There was no reasonable way to sort relevant and irrelevant graphics files because the fake I.D. files and the pornography files were innocuously labeled. It would be unreasonable to require the government to limit its search to directories called, for example, Fake I.D. Documents, and Giberson does not claim that there was such a folder.

We acknowledge that [n]ew technology may become readily accessible ... to enable more efficient or pinpointed searches of computer data, and that, [i]f so, we may be called upon to reexamine the technological rationales that underpin our Fourth Amendment jurisprudence in this technology-sensitive area of the law. Hill, 459 F.3d at 979(emphasis added). However, in this case, based on the technology available to him for searching Giberson's computer, Rehms' search was reasonable[.]

* * *

Our holding is not inconsistent with United States v. Carey, 172 F.3d 1268 (10th Cir. 1999). There, the Tenth Circuit suppressed evidence found when an officer, who was supposed to be searching a computer for drug-related documents, stumbled upon child pornography and began to search for more. Id. at 1276. Based on the officer's own testimony, the court found that the child pornography was not inadvertently discovered because the officer had temporarily abandoned the search authorized by the warrant in order to look for child pornography, contravening the limitations of the search warrant. Id. at 1273. The court was careful to state that the result in the case (suppression of the evidence) was predicated only upon the particular facts of this case, and a search of computer files based on

7

>           different facts might produce a different result.
>           Id. at 1276 (footnote omitted).  A concurring
>           opinion stated that if the record showed that [the
>           officer] had merely continued his search for drug-
>           related evidence and, in doing so, continued to
>           come across evidence of child pornography, ... a
>           different result would be required. Id. at 1277
>           (Baldock, B., concurring).

527 F.3d at 888-91.

The majority of courts addressing similar issues have reached essentially the same conclusion. Thus, it has been held that so long as the computer search is limited to a search for evidence explicitly authorized in the warrant, it is reasonable for the executing officers to open the various types of files located in the computer's hard drive in order to determine whether they contain such evidence. See e.g. Adjani, 452 F.3d at 1150 ("The government should not be required to trust the suspect's self-labeling when executing a warrant."); United States v. Fumo, 565 F. Supp. 2d 638, 649 (E.D. Pa. 2008) ("[B]ecause of the nature of computer files, the government may legally open and briefly examine each file when searching a computer pursuant to a valid warrant in order to determine which files are described by the warrant. [citation omitted]. For few people keep documents of their criminal transactions in a folder marked 'crime records'."); United States v. Kaechele, 466 F. Supp. 2d 868, 888 (E.D. Mich. 2006) ("To require such a pinpointed computer search, restricting the search to an email program or to specific search terms, would likely have failed to cast a sufficiently wide net to capture the evidence sought."); United States v. Maali, 346 F. Supp. 2d 1226, 1265 (M.D. Fla. 2004) ("[I]t has been recognized that seizure

of superfluous computer files is virtually inevitable."); United States v. Triumph Capital Group, Inc., 211 F.R.D. 31, 47 (D. Conn. 2002) ("Directories and files can be encrypted, hidden or misleadingly titled, stored in unusual formats, and commingled with unrelated and innocuous files that have no relation to the crimes under investigation. Descriptive file names or file extensions such as '.jpg' cannot be relied on to determine the type of file because a computer user can save a file with any name or extension he chooses."); United States v. Gray, 78 F. Supp. 2d 524, 529 (E.D. Va. 1999) ("[A]lthough care must be taken to ensure a computer search is not overbroad, searches of computer records 'are no less constitutional than searches of physical records, where innocuous documents may be scanned to ascertain their relevancy.'"); United States v. Hunter, 13 F. Supp. 2d 574, 584 (D. Vt. 1998) (same); see also United States v. Cartier, 543 F. 3d 442, 448 (8th Cir. 2008) ("[W]e decline to make a blanket finding that the absence of a search methodology or strategy renders a search warrant invalid per se."); Guest v. Leis, 255 F.3d 325, 335 (6th Cir. 2001) ("Defendants [law enforcement officers named in a civil action] may legitimately have checked to see that the contents of the directories corresponded to the labels placed on the directories. Suspects would otherwise be able to shield evidence from a search simply by 'misfiling' it in a directory labeled 'e-mail.'").

Assuming the executing agents were armed with warrants properly establishing probable cause to believe that the sought for evidence would be found in the computers and other storage devices in

question, those officers were authorized to briefly review all of the contents of the computers and storage devices in attempting to locate the evidence to be seized. Moreover, here the government employed a multi-layered computer search protocol, including a taint team, to minimize the review of stored documents not authorized for seizure under the warrants.

The defendants' motion seeks discovery of a detailed summary of the government's search methodology, including the key words, phrases and search terms utilized by the government, in culling through the stored information. The executing agents, however, were authorized to open and briefly examine each file to determine those described by the warrant. In this respect, the defendants are seeking discovery of matters that are not material to the preparation of the defense. Accordingly, their motion must be denied.

**CONCLUSION**

For the reasons set forth above, the defendants' motion for an order requiring the government to provide the defense with a detailed summary of its search methodology (Doc. No. 331) is denied.

IT IS SO ORDERED.

DATED: February 23, 2009.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:lg
jack.0266.computer