IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

        Plaintiff,

     v.

HARRISON ULRICH JACK, GENERAL
VANG PAO, LO CHA THAO, LO THAO,
YOUA TRUE VANG, HUE VANG, CHONG
YANG THAO, SENG VUE, CHUE LO,
NHIA KAO VANG, and DANG VANG,

        Defendants.

_____/

No.  CR.S-07-0266 FCD

ORDER RE DEFENDANTS'
MOTION FOR DISCOVERY
PURSUANT TO RULE 16
AND BRADY

        On December 16, 2008, this matter came before the undersigned for hearing on defendants' motion for an order compelling the government to produce documents and information in discovery pursuant to Rule 16 of the Federal Rules of Criminal Procedure and Brady v. Maryland, 373 U.S. 83 (1963).  (Doc. No. 329.)  Assistant United States Attorneys Bob Twiss, Ellen Endrizzi, Jill Thomas and Robert Tice-Raskin appeared on behalf of the United States.  Federal Defender Daniel Broderick and Assistant Federal Defender Ben Galloway

appeared on behalf of defendant Harrison Jack; attorneys John Balazs and Galia Phillips appeared on behalf of defendant General Vang Pao; attorney Mark Reichel appeared on behalf of defendant Lo Cha Thao; attorney William Portanova appeared on behalf of defendant Lo Thao; attorneys Jim Brosnahan, Raj Chatterjee and Nate Torres appeared on behalf of defendant Youa True Vang; attorney Krista Hart appeared on behalf of defendant Hue Vang; attorney Dina Santos appeared on behalf of defendant Chong Yang Thao; attorney Michael Bigelow appeared on behalf of defendant Seng Vue; attorney Shari Rusk appeared on behalf of defendant Chue Lo; attorney Dan Brace appeared on behalf of defendant Nhia Kao Vang; and attorney Hayes Gable appeared on behalf of defendant Dang Vang.

The court acknowledges at the outset that this is an unusual criminal prosecution, one in which the defendants are charged with conspiracy (18 U.S.C. § 371) to: violate the Neutrality Act (18 U.S.C. § 960)(Count I); receive and possess firearms and destructive devices (18 U.S.C. § 922(o)(Count IV); and export listed defense items without a State Department license (22 U.S.C. § 2778) (Count V). In addition, the defendants are charged with conspiracy to kill, kidnap, maim and injure people in a foreign country (18 U.S.C. § 956(a)) (Count II) and conspiracy to possess missile systems (18 U.S.C. § 2332g) (Count III). All five conspiracy charges relate to the defendants' alleged participation in a plot to ship weapons to Laos in order to facilitate the overthrow of the communist government of Laos and in aid of the ethnic Hmong living in that country. The discovery motion before the
/////

court, in keeping with the nature of the charges, is unusual both in its sheer breadth as well as with respect to the nature of the discovery sought.

For the reasons explained below, the defendants' motion will be granted in part.

THE DEFENDANTS' DISCOVERY MOTION

Through this motion the defendants seek an incredibly broad array of documents and information, including:

> 1.  Documents evidencing communications by the government through any of its departments or agencies with the defendants or any other member of the Hmong population regarding the United States' policy, planning, or conduct toward the government of Laos for the 46-year period between 1961 and 2007.
>
> 2.  Documents evidencing any overt or covert military planning or operations by the United States Government with respect to Laos the 46-year period between 1961 and 2007.
>
> 3.  Documents regarding the persecution and attempted genocide of the Hmong in around Laos, apparently from January 1975 to the present, within the possession of the government and its departments and agencies including the State Department, the Central Intelligence Agency (CIA), the Department of Defense (DOD) and the National Security Agency (NSA).
>
> 4.  Documents evidencing communications by the prosecution (including the U.S. Attorney's Office, the Department of Justice or agents working under their direction) with the CIA, other governmental agencies and the ATF agent regarding this case.
>
> 5.  Any recordings or documents obtained by the government in its investigation that constitute or describe cell telephone calls, emails or other communications sent or received by any defendant that were intercepted by the program for presidentially approved warrantless interception of electronic communications (PAWIEC), the NSA and/or a Narus computer.

6. Any evidence of prior "bad acts" that the government intends to present in its case-in-chief at trial under Federal Rule of Evidence 404(b).

7. All other documents and information previously requested by the defense but not produced by the government to date.

(Defs.' Mot. for Discovery at 2-4).[1]

The defendants argue that they are entitled to all of the requested discovery under Rule 16(a)(1)(E)(i) of the Federal Rules of Criminal Procedure because these are materials in the possession of the government that are "material to preparing the defense." (Id. at 5.) In addition the defendants contend that much of the requested discovery would constitute evidence favorable to the defense which the government has an obligation to produce under Brady v. Maryland, 373 U.S. 83 (1963).

Specifically, defendants argue that documents evidencing communication by government agencies with the defendants or any other Hmong individual over the 46-year period between 1961 and 2007 regarding the United States' policy, planning or conduct towards the government of Laos is material to the defendants state of mind with regard to the alleged conspiracies as well as to their possible defenses of outrageous government conduct, entrapment and defense of

---

[1] In fact, this is merely a broad summary of the documents and information sought by the defendants through the pending motion. Defense counsel represent that a summary of their actual requests seeking documents and information from each of these broad categories is set forth in Appendixes A through E attached to their motion. Those appendixes describe a total of fifty-two categories and sub-categories of documents and information that defendants seek in discovery. Some of the categories of documents sought are very specific ("The April 13, 2007 surveillance at K-mart parking lot") while others seek categories of documents from January 1975 to the present or from 1961 through 1976.

others.  (Id. at 7.) They argue that such evidence may help support
the conclusion that some or all of the defendants would not have
agreed to take any action against the government of Laos without the
approval and support of the United States Government. (Id.) Finally,
they contend that such evidence would demonstrate the defendants' lack
of knowledge that the United States was "at peace" with Laos as
required for conviction under the Neutrality Act, which criminalizes
only "knowing" conduct.  Defendants support their claim of entitlement
to such discovery by pointing to aspects of the discovery provided to
date which they contend indicate that the undercover ATF agent in this
case and others led them to believe that they had the support of the
United States Government, including those within the CIA and
elsewhere, in their efforts which now find them charged before the
court. (Id. at 8-13.)

        The defendants next contend that documents reflecting overt
or covert military operation by the United States in Laos between 1961
and 2007 are material to their defense against the conspiracy to
violate the Neutrality Act charged against them in Count I of the
indictment.[2]  In this regard, the defendants argue that the government
will have the burden of proving that the United States was "at peace"

_____

[2] The defendants contend that 46-year time period of the inquiry
is necessary given the unique "history of the Hmong - including many
of the Defendants - in fighting the communist forces as allies of the
United States."  (Reply at 15.)  It appears that defendants
essentially contend that because some of them personally participated
in military operations on behalf of the United States in Laos
beginning in the 1960's and that thereafter the communist who assumed
control of Laos continued the conflict against the Hmong as allies of
the United States, from their point of view the United States has
never been "at peace" with Laos for the past 46 years and they seek
discovery to support that view.  (Id. at 17.)

5

with Laos at the time of the defendants' alleged act of violating the Neutrality Act. (Id. at 13.) Relying on the decision in United States v. Terrell, 731 F. Supp. 473 (S.D. Fla. 1989), defendants argue that evidence of covert operation against the government of Laos either undertaken or supported by the United States Government would refute any evidence that the two countries were "at peace" within the meaning of the Neutrality Act and would obviously be very material to the preparation of the defense. (Id. at 14-15.) Moreover, defendants argue that to have conspired to violate the Neutrality Act they must have acted "knowingly" and that this mens rea requirement modifies each element of the crime. (Reply at 10.) Accordingly, they contend, the state of mind of each defendant as to whether the United States was "at peace" with Laos will be at issue at trial and necessitates the granting of the requested discovery. (Reply at 10-17.)

Defendants argue that they are entitled to discovery of documents "regarding the condition of the Hmong in around Laos since 1976, including the persecution of the Hmong and/or genocide by the Laotian government" because such information is material to a possible "defense of others" defense that might be raised by some defendants. (Defs.' Mot. for Discovery at 15-16.) Such discovery may, they argue, assist the defendants in establishing that they acted with the intent only to defend the Hmong people from persecution by the communist Laotian government and had no intent to murder or maim as charged in Count II of the indictment. (Reply at 18.) They argue that such documents are in the possession of the government and that having the
/////

government as the source of such evidence will increase its weight before the jury.

The defendants next contend that the government should be required to produce in discovery all documents evidencing communications by the prosecution with the CIA, other governmental agencies and the ATF agent regarding this case. Defendants assert in conclusory fashion that such communications are exculpatory information that must be disclosed under Brady. (Id. at 17.) Defendants make the same conclusory argument with respect to any documents reflecting communication by any person or agency with the undercover ATF agent regarding his activities in connection with this case. (Id. at 18.) Pointing to the prosecutor's statement at the July 12, 2007, bail hearing that, contrary to defendant Lo Cha Thao's representations in recorded telephone conversations, the prosecution had confirmed with the General Counsel's Office for the CIA that no contact had taken place between Thao and named CIA representatives, the defendants argue that the government has waived any work product privilege with respect to all such communications. (Id. at 16-17.)[3]

---

[3] With respect to these first four general areas the defendants contend that, at the very least, the facts of the case are in dispute thereby highlighting their need for the requested discovery. They assure the court that the mere fact that they seek sensitive and classified information is no obstacle to the granting of discovery since counsel can receive clearance and any classified information can be handled pursuant to the Classified Information Procedures Act (CIPA), 18 U.S. App 3 §§ 1-16 in the standard fashion. (Reply at 1-3.) They also suggest, vaguely referring to possible "communications between the United States and the Hmong" and citing to specific conversations between the undercover ATF agent and defendant Jack but without further explanation, that the requested discovery may be relevant to defenses based upon claims of outrageous government conduct and entrapment. (Id. at 5-6.)

Finally, the defendants argue that any documents prepared by the CIA or other agencies and shared with prosecution do not qualify as work product at all. (Reply at 18.)

Citing newspaper accounts and court decisions, the defendants argue that since September 11, 2001, the NSA and other intelligence agencies of the United State Government have been eavesdropping, monitoring international telephone calls and emails and may have surreptitiously intercepted domestic telephone and email messages. (Defs.' Mot. for Discovery at 19.) Accordingly, defendants seek discovery of all recordings or documents resulting from the interception of their telephone, email or other communications by presidentially approved warrantless interception, by the NSA and/or by a NARUS computer. They contend that all such communications would constitute statements made by a defendant subject to disclosure under Rule 16(a)(1)(A), are likely to include exculpatory information discoverable under <u>Brady</u> and must be produced regardless of whether they will be used by the government in its case-in-chief because the defendants are entitled to challenge their seizure, and any taint flowing therefrom, by way of motion to suppress. (<u>Id</u>. at 19-20.) Finally, defendants argue that the government should be required to produce an affidavit stating that a reasonably diligent search has been performed, describing the search and verifying that no responsive documents exist. (Reply at 20.)

With respect to any prior "bad acts" evidence covered by Federal Rule of Evidence 404(b), defendants contend that in light of the complexity of the conspiracy charges and the number of defendants

named in the indictment, reasonable notice in this case should require that the government produce any such evidence it intends to present in its case-in-chief at least sixty days prior to trial. (Defs.' Mot. for Discovery at 21.)

As to the seventeen specific items of discovery set forth in Appendix E to their motion, defendants insist that the government has previously agreed to provide the requested discovery but has not yet done so, necessitating an order compelling production. (Id.; Reply at 25-26.) In their reply brief, however, defendants for the first time address their seventeen specific discovery requests set forth in Appendix E. They contend that because the ATF undercover agent referred to the defendants as "Neo Hom," the government is required to produce all documents regarding its investigation of the "Neo Hom" for the past ten years. (Reply at 20-21.) The defendants also contend that because the government interpreters are witnesses, their identities must be divulged to the defense. (Reply at 21-22.) Defendants also represent that prior to the arrests in this case government agents informed defendant Youa True Vang that he was being targeted for assassination and yet limited their discovery response to only representing that they were unaware of assassination attempts against defendant Vang Pao in the last ten years. (Reply at 22.) Defendants argue that the government should respond to this request with respect to all of the defendants as the request was posed. (Id.) In light of the government's response that it appears that the videotape of the 2007 search of defendant Youa True Vang's residence was either lost or recorded over, defendants make a broad claim of

spoliation of evidence and argue that a "full evidentiary hearing into the spoliation of this evidence, as well as potential spoliation of any other evidence regarding this case" is required. (Id.) Finally, defendants assert that in light of the admitted communication between the prosecutors in this case and the CIA, the government's duty to produce discovery extends to information contained in the files of the CIA, the NSA and the State Department. (Id. at 24.)

THE GOVERNMENT'S OPPOSITION

The government's response to the pending motion commences with representations regarding the broad scope of discovery already produced to the defense, including approximately 41,320 pages along with CDs, other media and videotapes, beyond that required under Rule 16. (Opp'n at 1-3.) The government also notes the limitations on Rule 16 discovery and observes that the constitutional rights of a defendant are not violated every time the government "fails or chooses not to disclose evidence that might prove helpful to the defense." (Id. at 3-4.) The prosecution argues that Rule 16 does not mandate the type of discovery sought because the defendants have made no showing of materiality with respect thereto. (Id. at 4.)[4] Moreover, the prosecution contends that the investigating agencies in this case were the ATF and the FBI and that the prosecution has neither

[4] Apparently in an attempt to support their argument that the defendants have failed to show the materiality of the requested discovery, the government devotes much of its opposition to refuting defendants' assertions of fact and arguing that the evidence will show that the charged conspiracies were hatched by the defendants themselves without government involvement or encouragement and untainted by entrapment or governmental misconduct of any kind. (See Opp'n at 5-7, 9-19, 25-27.)

knowledge of or access to records that may exist at the CIA, NSA, DOD, State Department or any other federal agency such as those sought by the defendants through this motion. (Id. at 5.)

The prosecution also objects to defense representations that the government has agreed to produce certain discovery requested where, in fact, the government merely did not respond to the request with an objection. (Id. at 7.) In fact, the government asserts, it opposes practically every aspect of the pending motion as has been made clear in lengthy meet and confer sessions with defense counsel. (Id. at 7-8.) Finally, the government argues that it seeks reciprocal discovery from the defendants pursuant to Rules 12, 12.2 16(b) and 26(a) of the Federal Rules of Criminal Procedure, setting forth those discovery requests in considerable detail. (Id. at 41-44.)[5]

Turning more specifically to the defendants' discovery requests, the government argues that the defendants are entitled to none of the requested discovery with respect to the charge that they conspired to violate the Neutrality Act (18 U.S.C. § 960). (Id. at 7, 30.) The prosecution notes that defendants seek wide-ranging, extremely voluminous (perhaps millions of documents) and highly sensitive discovery in this vein for the lengthy period of 1961 to the

/////

/////

/////

_____

[5] Defendants counter that the government's attempt to bring an unnoticed cross-motion for reciprocal discovery in their opposition brief is both procedurally defective, unsupported under the law as framed and, in any event, premature. (Reply at 26.)

present[6] involving the world-wide Hmong community. (Id. at 19-21, 30.)

In this regard, the government argues that the defendants' belief of whether the United States was "at peace" with Laos is irrelevant under the law and evidence relevant to their mental state should be excluded from their trial, thereby precluding discovery in the area. (Id. at 7.) The prosecution contends that whether the United States is "at peace" with another country, as that phrase is used in the Neutrality Act, is determined by an objective standard. (Id. at 21.) The government asserts that under cases interpreting that language, the United States is not "at peace" when it is involved in a declared war or open and notorious active military operations against a foreign nation. (Id. at 22-23.) The prosecution essentially concludes that because the United States is obviously "at peace" with Laos, the defendants are not entitled to the requested discovery in this area and that granting such discovery would violate any number of governmental privileges. (Id. at 27, 30-31.)

Addressing the defense request for production of documents reflecting the persecution of the Hmong in and around Laos, the government notes that the discovery request is tied to potential affirmative defense of "defense of others." (Id. at 29.) However, they contend that the elements of the defense cannot be met here and that, in any event, the defense cannot be asserted with respect to a

---

[6] The government notes that even if the defendants' state of mind on the "at peace" issue is found to be relevant, it could only result in the discovery of documents evidencing any overt or covert military planning or operations by the United States Government with respect to Laos for a few years prior to November 2006, when the defendants allegedly launched their conspiracy. (Opp'n at 21-22.)

conspiracy charge. (Id.) Lastly, the prosecution argues that granting such discovery would violate any number of governmental privileges. (Id. at 33.)

With respect to the defendants' request for documents evidencing communications by the prosecution, the government responds that such communications are obviously work product and specifically not subject to disclosure in discovery under the law. (Id. at 27-28.) The prosecution also notes that defendants have made no attempt to show materiality with respect to this discovery request. (Id.)

In response to the defendants' request for cell telephone calls, emails or other communications sent or received by any defendant that were intercepted by the program for presidentially approved warrantless interception of electronic communications (PAWIEC), by the NSA or by a Narus computer, without waiving any privilege, the prosecution represents that other than calls intercepted pursuant to court-authorized wiretaps and pen registers, copies of emails seized pursuant to search warrants or undercover recordings of meetings attended by defendants, all of which the defense has received in discovery, no communications involving the defendants were intercepted by the NSA or any other government agency. (Id. at 33-35.)

Addressing prior "bad acts" evidence under Rule 404(b), the prosecution advises the court that it has notified the defendants in writing that it currently does not intend to introduce any such evidence. (Id. at 10.) The government states that if their position changes, they will file a motion for that purpose. (Id.)

13

Finally, regarding defendants' seventeen specific discovery requests set out in Appendix E to their discovery motion, the government reports that they have either provided the requested discovery or object to the request. (Id. at 36.) Regarding the latter, the prosecution states that: it does not understand the request for the locations and names of informants; objects to disclosure of the names of its interpreters in order to protect them from harassment; is unable to produce a videotape of the search of Youa True Vang's residence on June 4, 2007 and believes that it has either been lost or recorded over; has conducted a search and found no document referencing any assassination attempts on defendant Vang Pao in the past ten years; objects to the request for documents reflecting assassination attempts in the last ten years by the Government of Laos in general on the grounds or relevance, lack of materiality, remoteness and because production would be overly burdensome, onerous, time consuming and expensive; objects to the request for documents reflecting the government's investigation of the so-called "Neo-Hom" over the last ten years on the grounds of relevance, lack of materiality, remoteness and because production would be overly burdensome, onerous, time consuming and expensive; objects to the request for discovery of all documents given to the ATF agent by any defendant on the grounds of overbreadth, relevance and lack of materiality and privilege; and object to the request for all documents sent to or received by any person outside the U.S. Attorney's Office concerning any document given to the ATF undercover agent by any defendant on the grounds of overbreadth, relevance and lack of

1    materiality and privilege.  (Id. at 36-41.)

2                              ANALYSIS

3             As stated some time ago at the hearing, the court has had a

4    difficult time "getting its arms around" this motion.  Upon further

5    reflection, the undersigned believes that there are a number of

6    reasons for this.  In some respects the defendants' motion is so

7    clearly overbroad and seeks such extensive criminal discovery (i.e.

8    documents spanning 46 years of United States activity with respect to

9    Laos) that not even defense counsel can seriously argue that they are

10   entitled to all that is requested under Rule 16 and Brady.[7]  On the

11   other hand, the government has in large part responded to the

12   defendants' overbroad discovery requests with a lengthy statement of

13   its version of the case with the conclusion that under its version of

14   the facts the defendants are guilty as charged, have no valid defenses

15   and thus any discovery requested is not material to the preparation of

16   the defense.  When it comes to many of the very specific discovery

17   requests posed in defendants' Appendix E, the parties are like ships

18   passing in the night.  The defendants summarily contend that the

19   government agreed to produce documents responsive to each of the

20   requests but has failed to do so.  The government responds that they

21
         [7] For example, at the hearing the following exchange took place:
22
         COURT:        I'm finding it difficult to figure out how to
23                     even address it and try to craft something
                       that makes sense out of it, because frankly,
24                     I think you're asking for too much.

25       MR. BROSNAHAN: That wouldn't mean, Your Honor, forgive me,
                        that we shouldn't get anything.
26
     (Reporter's Transcript (RT) of December 16, 2008, Hearing at 65.)

                                     15

never agreed to produce discovery responsive to the requests and that most are objectionable. Unfortunately, neither side addresses the merits of the discovery requests to any significant extent. Given these circumstances, below the undersigned will address the issues raised by the motion to the extent possible.

Under Federal Rule of Criminal Procedure 16(a)(1)(E), the government must provide a criminal defendant with discovery of materials "which are within the possession, custody or control of the government, and which are material to the preparation of the defendant's defense." As the Ninth Circuit has stated:

> Rule 16 permits discovery that is relevant to the development of a possible defense. United States v. Clegg, 740 F.2d 16, 18 (9th Cir. 1984). To obtain discovery under Rule 16, a defendant must make a prima facie showing of materiality. United States v. Little, 753 F.2d 1420, 1445 (9th Cir. 1984); United States v. Cadet, 727 F.2d 1453, 1468 (9th Cir. 1984). Neither a general description of the information sought nor conclusory allegations of materiality suffice; a defendant must present facts which would tend to show that the Government is in possession of information helpful to the defense. See Little, 753 F.2d at 1445; Cadet, 727 F.2d at 1466-68.

United States v. Mandel, 914 F.2d 1215, 1219 (9th Cir. 1990). See also United States v. Zone, 403 F.3d 1101, 1107 (9th Cir. 2005).

With respect to the defendants' burden of making a prima facie showing of materiality in support of the request for discovery under Rule 16, it has been observed as follows:

> The materiality requirement, however, is not a "heavy burden"; rather, evidence "is material as long as there is a strong indication that ... the evidence will 'play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting

16

> impeachment or rebuttal.'" <u>United States v.</u>
> <u>Liquid Sugars, Inc.</u>, 158 F.R.D. 466, 471 (E.D.
> Cal. 1994). "[R]equests which are designed to
> generally cast for impeachment material...are not
> material. Such requests are instead simply
> speculative inquiries without basis in fact to
> believe that the information acquired will be
> significantly helpful." <u>Id</u>. at 472.

<u>United States v. Bergonzi</u>, 216 F.R.D. 487, 501 (N.D. Cal. 2003). <u>See</u>
<u>also</u> <u>Strickler v. Greene</u>, 527 U.S. 263, 280 (1999) ("[E]vidence is
material if there is a reasonable probability that, had the evidence
been disclosed to the defense, the result of the proceeding would have
been different.")  Nonetheless, where the government has shown that
complying with a criminal defendant's discovery request under Rule 16
would be unduly burdensome, "it is incumbent on the district court to
consider the government interests asserted in light of the materiality
shown." <u>Mandel</u>, 914 F.2d at 1219 (citing <u>Cadet</u>, 727 F.2d at 1468).
In the absence of the required factual showing from the defense, there
is no basis upon which the court to exercise any discretion it has to
order discovery. (<u>Id</u>.)

Under the holding in <u>Brady v. Maryland</u>, 373 U.S. 83, 86
(1963), the prosecution has an obligation to reveal exculpatory
evidence, whether substantive or for impeachment purposes, when such
evidence is "material" to the defense and in the possession of the
government. Evidence in this context is "material" to the defense if
"there is a reasonable probability that, had the evidence been
disclosed to the defense, the result of the proceeding would have been
/////
/////

17

different." United States v. Bagley, 474 U.S. 667, 681 (1985).[8]

While the Brady rule is to be interpreted broadly to encourage

prosecutors to carry out their duty, the rule has its limitations and

> does not require the prosecution to divulge every
> possible shred of evidence that could conceivably
> benefit the defendant. See, e.g., Moore v.
> Illinois, 408 U.S. 786, 795 [] (1972) ("We know of
> no constitutional requirement that the prosecution
> make a complete and detailed accounting to the
> defense of all police investigatory work on a
> case.")

Smith v. Secretary, Dept. of Corrections, 50 F.3d 801, 823-24 (10th

Cir. 1995). In this sense, and because there "is no general

constitutional right to discovery in a criminal case[,]" Brady is not

an evidentiary rule that grants broad discovery powers to a defendant.

Weatherford v. Bursey, 429 U.S. 545, 559 (1977). Certainly, a

defendant's mere allegation that the requested information might be

material does not entitle the defense to essentially an unsupervised,

unlimited search of the government's files. Pennsylvania v. Ritchie,

480 U.S. 39, 59 (1987).

Against these standards the court will address each of the

issues presented by the pending motion.

/////

/////

---

[8] It has been suggested that where there is a pretrial motion seeking Brady material, the question is strictly whether the evidence sought is favorable to the defense and that the concept of materiality is irrelevant. See United States v. Sudikoff, 36 F. Supp. 2d 1196, 1199 (C.D. Cal. 1999); but see United States v. Acosta, 357 F. Supp. 2d 1228, 1243 (D. Nev. 2005) (rejecting that proposition and finding that the materiality standard governs pretrial requests for Brady material as well).

<u>Requests 1 & 2 - United States' policy, planning, conduct and any</u>
<u>overt or covert military planning or operations with respect to Laos</u>
<u>between 1961 and 2007.</u>

This discovery request is obviously overbroad and granting it in full would clearly pose an undue and unreasonable burden on the government. That, however, does not end the inquiry. The issue of discovery regarding the policies of our government in relation to Laos and any overt or covert military planning or operations by the United States with respect to Laos turns on the meaning of "at peace" as that phrase is used in the Neutrality Act that the defendants here are charged with conspiring to violate. As noted above, the defendants argue that evidence of covert operation against the government of Laos either undertaken or supported by the United States Government would refute any evidence that the two countries were "at peace" within the meaning of the Neutrality Act and would obviously be very material to the preparation of the defense.[9] The government responds that under an objective standard, the United States is obviously "at peace" with Laos and the defendants are not entitled to any of the requested discovery in this area.[10]

/////

---

[9] Defendants also contend that to have conspired to violate the Neutrality Act they must have acted "knowingly" and that the state of mind of each defendant as to whether the United States was "at peace" with Laos will therefore be at issue at trial, necessitating the granting of discovery in this area.

[10] The government also argues that, in any event, discovery related to the "at peace" question could only extend to documents evidencing any overt or covert military planning or operations by the United States Government with respect to Laos for a few years prior to November 2006, when the defendants allegedly launched their conspiracy since the issue would be whether the United States was "at peace" with Laos when the defendants acted.

1  The court is persuaded by the defendants' arguments and

2  concludes that they are entitled to some degree of discovery in this

3  area.  In United States v. Terrell, 731 F. Supp. 473 (S.D. Fla. 1989),

4  the defendants were charged with conspiracy in violation of the

5  Neutrality Act in connection with their alleged shipment of weapons to

6  the Nicaraguan Contras.  The district judge granted the defendants'

7  motion to dismiss, finding that the United States was not "at peace"

8  with Nicaragua within the meaning of the Act at the time of the

9  charged offense.  The district judge had conducted an evidentiary

10 hearing at which the defendants presented evidence chronicling the

11 extensive history of American involvement, including through covert

12 operations, in Nicaragua on behalf of the so-called "Contras" who were

13 engaged in armed opposition to the Sandinista government.  731 F.

14 Supp. at 474-75.  The court in Terrell observed:

15          The Government admits that the wording of the
            Neutrality Act presents some difficulty in these
16          modern times of covert activities and undeclared
            warfare. The Government concedes that it would be
17          inaccurate to say that the only time the United
            States is not "at peace" is when Congress has
18          formally declared war. The Government does assert
            that the United States is "at peace" if Congress
19          has not affirmed or ratified actions contrary to a
            state of peace.
20
            In the instant case the Government asserts that,
21          as of October 12, 1984, the effective date of
            Boland II, the United States was "at peace" with
22          Nicaragua. The Government argues that, even if the
            United States was not "at peace" with Nicaragua
23          prior to October 12, 1984, a state of peace
            existed thereafter. The Government makes this
24          argument on the ground that Boland II demonstrated
            that Congress did not affirm or ratify any further
25          activities the executive branch might have had in
            mind regarding the Contra cause in Nicaragua.
26 /////

The Government's argument makes the date of
        passage of Boland II, October 12, 1984, a bright
        line cut-off date. The Government asserts that,
        even assuming that the United States was not "at
        peace" with Nicaragua prior to October 12, 1984,
        the United States was "at peace" with Nicaragua
        thereafter and thus any activities engaged in
        between October, 1984, and March, 1985, occurred
        at a time when the United States was "at peace"
        with Nicaragua.

        The facts of this case simply do not support the
        Government's argument that peace broke out between
        the United States and Nicaragua on October 12,
        1984. The facts, as laid out in bare-bones form in
        this Order, show that Boland II cut off
        Congressional funding to the Contras for a period
        of some ten (10) months, but did not stop the
        administration from seeking and coordinating aid
        for the Contras from other sources.

        The facts also show that the Contras, funded in
        part by the executive branch, continued their
        attempt to overthrow the Sandinista government.
        The mere fact that Congress refused to fund the
        Contra cause for a brief period of time is not
        equivalent to saying that the United States was
        "at peace" with Nicaragua.

731 F. Supp. at 476.

        More recently in <u>United States v. Chhun</u>, 513 F. Supp. 2d

1179 (C. D. Cal. 2007) the defendant was charged with conspiracy to

violate the Neutrality Act in connection with a failed coup attempt

against the government of Cambodia and moved to dismiss on the grounds

that the United States was not "at peace" with Cambodia at the time

within the meaning of the Act.  The district court found that whether

the United States was "at peace" with Cambodia was an element of the

offense upon which the government bore the burden of proof at trial to

establish beyond a reasonable doubt.  513 F. Supp. 2d at 1181.

Moreover, the court concluded that even if the "at peace" requirement

was a mixed question of law and fact, it was for a jury to determine

whether the government had carried its burden of proof in that regard.

(Id. at 1182.)

In determining the meaning of "at peace" under the

Neutrality Act, the court in Chhun reviewed the historical

underpinnings of the phrase and noted that "the act was aimed at

'provid[ing] a comprehensive code in prevention of acts by individuals

within our jurisdiction <u>inconsistent with our own authority, as well

as hostile to friendly powers</u>.'" 513 F. Supp. 2d at 1182-82 (emphasis

added) (quoting <u>United States v. Three Friends</u>, 166 U.S. 1, 53

(1897)). The court in Chhun concluded that,

> The initiation of a military intervention or
> provocative acts by a private individual against a
> friendly nation could lead to war against the
> United States. The Neutrality Act provided the
> government with a means to avoid an international
> incident by allowing for prosecution of those
> individuals. However, the "at peace" requirement
> did not recognize the need for such prosecutions
> when one acts against nations with whom the United
> States was already at war.
>
> On the basis of the statute's purpose and the
> term's ordinary meaning, <u>the Court concludes that
> the term "at peace" refers to the relationship
> between the United States and a foreign country
> when there is no war, whether declared or
> undeclared. This means that the United States is
> not "at peace" when involved in a declared war or
> active military operations against a foreign
> nation. The implication is that the prosecution
> must prove to a jury the absence of a declared war
> or active military operations between the United
> States and Cambodia in order to carry its burden
> on the "at peace" requirement.</u>

513 F. Supp.2d at 1184 (emphasis added). Based on this interpretation

of the Act, the court also rejected the defendant's void-for-vagueness

challenge to the criminal statute.  513 F. Supp. 2d at 1185.

The undersigned finds the reasoning of _Terrell_ and _Chhun_ to be persuasive.  As the court stated in _Chhun_, the "at peace" requirement under the Neutrality Act is an element of the offense upon which the government bears the burden of proof at trial, with the jury making the determination whether the government has satisfied its burden by proof beyond a reasonable doubt.  In addition, as the courts in both _Terrell_ and _Chhun_ concluded, the United States is not "at peace" with another nation when it is involved in a declared or undeclared war with that nation.  That is the case whether or not its active military operations are open and notorious or, as in the case of the support for the Contras against the Sandinista Government of Nicaragua, the military operations are being undertaken or supported covertly by the United States.

The undersigned recognizes that in a subsequent order the district court in _Chhun_ purported to expand on its first order, finding that the issue of covert activities was not clearly presented by the motion to dismiss that was initially addressed.  _See_ _United States v. Chhun_, No. CR 05-00519(A), 2008 WL 793386 (C.D. Cal. Mar. 20, 2008).  In that second order, the court concluded that even an undeclared war involving military operations was required to be "open and notorious" to establish that the United States was not "at peace" with a foreign nation.  2008 WL 793386, *1.  The court in this respect rejected the conclusion reached in _Terrell_ that covert activities could support a conclusion that the United States was not "at peace" with another nation.  2008 WL 793386, *2.  It did so based upon the

23

reasoning that if the United States is engaged in a covert, undeclared war against another nation, a private individual's attack upon that other nation might provoke a conflict with the United States or expose its covert operations.  Id.  The court concluded that it is solely the prerogative of United States government to make such foreign policy decisions.  Id.

The undersigned finds the reasoning of the second, and unpublished, order in Chhun to be unpersuasive.  First, it is important to recall that in the published opinion in Chhun the court rejected a void-for-vagueness challenge to the Neutrality Act based upon its interpretation of the Act which required a finding that if the United States was involved in any active military operations against a nation it was not "at peace."  513 F. Supp. 2d at 1184-85. It would seem that the reasoning of the second, and unpublished, Chhun order would upset that rejection of the void-for-vagueness challenge and at the same time raise serious due process issues with respect to the Act.  See United States v. Lanier, 520 U.S. 259, 266 (1997) ("[D]ue process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope."); Marks v. United States, 430 U.S. 188, 191-92 (1977) (Due process protects against judicial infringement of the "right to fair warning" that certain conduct will give rise to criminal penalties); Bouie v. City of Columbia, 378 U.S. 347, 354 (1964) (core due process concepts include notice, foreseeability and the right to fair warning as those concepts bear on the constitutionality of attaching criminal penalties

24

to certain conduct)

While the reasoning of the second order in <u>Chhun</u> may protect the foreign policy interests of the United States, it does not withstand scrutiny as a matter of constitutional and criminal law. For, under its reasoning a defendant who acts against a nation may be convicted of violating the Neutrality Act and imprisoned even though the United States is in fact engaged in a war, albeit a covert undeclared war, against that nation so long as our government is successful in keeping secret its activities.[11]  If those military activities are exposed and thus, presumably, become open and notorious the same acts by the individual are no longer criminal.  The undersigned concludes that this simply cannot be law for the reasons alluded to above.

Given this interpretation of the Neutrality Act, information with respect to any overt <u>or</u> <u>covert</u> military planning or operations with respect to Laos would clearly be material to the preparation of the defendants' defense and would most likely be exculpatory information subject to disclosure under <u>Brady</u>.  However, the government is correct when it objects to the defendants' request for discovery in this area for the period from 1961 to 2007.  As noted by the government, and as is implicit in the analysis engaged in above, the question is whether the United States was "at peace" with Laos at

---

[11] In short, under the second order in <u>Chhun</u>, even though we may in fact be "at war" with another nation, we are "at peace" with them until it is exposed that we are in fact engaged in military activities against them, at which point we are no longer "at peace."  No person of ordinary intelligence would understand this to be the definition of "at peace."  <u>See</u> <u>Chhun</u>, 513 F. Supp. 2d at 1185.

the time the defendants acted.[12]  Here, the defendants are charged

with conspiring to violate the Neutrality Act "[b]eginning at a date

unknown, but no later than in or about November of 2006, and

continuing until on or about June 3, 2007[.]" (Indictment at 5.)  The

prosecution has appropriately suggested that any discovery of

documents evidencing overt or covert military planning or operations

by the United States Government with respect to Laos should therefore

be limited to the few years prior to November 2006.

Accordingly, the court will order the government to produce

to the defendants all documents or communications in in its possession

or control evidencing any overt or covert military planning or

operations with respect to Laos from January 1, 2005, through June 3,

2007.  Within sixty days of the date of this order the prosecution

shall notify the court whether any such documents or communications

have been discovered through a diligent search by the government and

whether security clearances or further orders by the court will be

necessary prior to production to the defense.[13]

In all other respects, the undersigned finds that the

defendants have failed to make the required showing of materiality

with respect to their request for communications by the government

through any of its departments or agencies with the defendants or any

other member of the Hmong population regarding the United States'

---

[12]   In the broadest sense the inquiry may extend to what the
defendants' state of mind was with respect to whether the United
States was "at peace" with Laos at the time they acted.

[13] If the assigned district judge were to disagree with the
undersigned's construction of the Neutrality Act, this may well impact
the extent of the discovery to which the defendants are entitled.

policy, planning, or conduct toward the government of Laos for the 46-year period between 1961 and 2007.  Accordingly, that overly broad discovery request will be denied except to the extent provided above.

Request 3 - Documents regarding the persecution and attempted genocide of the Hmong in and around Laos within the possession of the government and its departments and agencies.

As noted, defendants seek discovery from the government in this regard purportedly to support a possible "defense of others" defense.  Such a defense is closely related to one based on self-defense.  These related defenses focus on whether a defendant reasonably believes that the use of force was necessary to defend oneself or another against the immediate use of unlawful force.  Ninth Circuit Model Jury Instructions, Criminal 6.7 at p. 106 (2003 Ed.); Skains v. Yates, No. Civ S-06-0127 LKK GGH P, 2008 WL 2682512, *11 (E.D. Cal. 2008).  To support such a defense there must be evidence from which a jury could find that the defendant actually had a belief at the time of his actions that the peril was imminent and not prospective or even in the near future.  Skains, 2008 WL 2682512, *11.

Even assuming that a defense of "defense of others" is available against the pending conspiracy charges, such a defense would focus solely on the belief of the defendants at the time they acted.  Given this focus on the defendants' own state of mind when they allegedly acted between November of 2006 and June 3, 2007, the court cannot find that the defendants have made a prima facie showing of materiality with respect to their broad request for 46 years worth of documents in the possession of the government (and its departments and agencies) reflecting the persecution and attempted genocide of the

Hmong in around Laos. This is particularly true given the undue

burden that would be imposed on the government were such broad

discovery to be granted. For, if the defense of others defense is

available to them, what is relevant is the defendants' own state of

mind at the time they acted, not what is later discovered to exist in

government files. Accordingly, this discovery request will be denied.

<u>Request 4 - Documents evidencing communications by the prosecution
team with the CIA, other governmental agencies and the ATF agent
regarding this case.</u>

This request is also overbroad and the defendants' sweeping

conclusion that evidence of any such communications are <u>Brady</u> material

is speculative and unsupported. The undersigned concludes that the

prosecution did not broadly waive all work product privilege by

stating at a bail hearing that they had contacted the General

Counsel's Office of the CIA and confirmed that, contrary to what he

stated in a tape-recorded telephone conversation, defendant Thao had

not had contact with certain high ranking CIA officials. In short,

there is no basis either under Rule 16 or <u>Brady</u> to order the

prosecution to turn over documents evidencing all of its

communications with other government agencies and its own undercover

agent in connection with this investigation.[14]

/////

/////

---

[14] Were the government in possession of documents evidencing
support for the defendants' actions or actions similar thereto during
the relevant time period by the CIA or other government agencies, such
information would be <u>Brady</u> material subject to disclosure to the
defense under the aspect of this order relating to the "at peace"
requirement.

1  <u>Request 5 - Recordings or documents obtained by the government</u>
   <u>constituting or describing cell telephone calls, emails or other</u>
2  <u>communications sent or received by any defendant that were intercepted</u>
   <u>by the program for Presidentially Approved Warrantless Interception of</u>
3  <u>Electronic Communications (PAWIEC), the NSA and/or a Narus computer.</u>

4         The prosecution represents that other than calls intercepted

5  pursuant to court-authorized wiretaps, pen registers, copies of emails

6  seized pursuant to search warrants and undercover recordings of

7  meetings attended by defendants (all of which the defense has already

8  received in discovery), no communications involving the defendants

9  were intercepted by the NSA or any other government agency.  In light

10 of the government's representations in this regard, this discovery

11 request will be denied.[15]

12 <u>Request 6 - Prior "bad acts" under Federal Rule of Evidence 404(b).</u>

13        In light of the complexity of this highly unusual

14 prosecution, defendants request that any prior "bad acts" evidence the

15 government intends to present in its case-in-chief be disclosed at

16 least sixty days prior to trial.  The government responds that it does

17 not "currently" intend to offer any Rule 404(b) evidence but if it

18 determines to do so, it will file an appropriate motion.

19        Federal Rule of Evidence 404(b) requires that the

20 prosecution in a criminal case provide reasonable notice in advance of

21 trial of the nature of any such evidence it intends to introduce.  The

22 Rule anticipates that the prosecution will submit the necessary

23 information in a reasonable and timely fashion, with the determination

24

---

25 [15] Defendants have argued that the prosecution should be required
   to produce an affidavit describing the nature of the search performed
   and verifying that no responsive document exists.  The court declines
26 to require such a declaration in light of the direct representations
   of the prosecution in response to this discovery request.

of what constitutes sufficiently timely notice to be determined largely on the circumstances of each case.  See Fed. R. Evid. 404(b), Commentary to 1991 Amendments.

Here, the undersigned is not fully satisfied with the government's vague response that while it does not currently intend to offer 404(b) evidence, if it changes its mind it will make an appropriate motion.  Given the unusual and complex nature of this prosecution, the court finds that reasonable notice in this case requires that notice of 404(b) evidence be provided to the defense sixty days in advance of trial.  Accordingly, the defendants' motion for discovery is granted in this respect.

Request 7 - All other materials requested by the defense but not produced by the government to date (Appendix E).

This catch-all discovery request actually poses seventeen separate discovery demands that are set forth in Appendix E to defendants' motion.  The government has stated in its response to the pending motion that it has already provided, or will provide, all available discovery material in response to requests 4 through 9 and 11-12 set forth in defendants' Appendix E.  Accepting that statement, the court will address only the remaining discovery requests below.

1. The location of the names of all informants who are percipient witnesses.

The government states that it does not understand this oddly worded request for discovery.  The defendants have not illuminated what they actually seek in this regard.  The government's objection is reasonable and this discovery request will therefore be denied.

<u>2 & 3.  Names of interpreters of intercepted calls and name</u>

<u>of the particular FBI interpreter referred to in discovery.</u>

Defendants argue in conclusory fashion and without citation to authority that the interpreters utilized by the government in this action are "witnesses" and that their identities are therefore material to the preparation of the defense and must be disclosed.  The government opposes the request.[16]

Defendants are certainly not precluded from challenging the accuracy of the translations in this case and the court is confident that they will likely do so by offering alternative translations where appropriate.  However, it is not at all clear that the identity of the government's interpreters need be disclosed to allow the defendants to do so.  At this point, defendants have failed to show the materiality of the requested discovery and have provided no authority for the proposition that they are entitled to the names of the government's interpreters.  Accordingly, this request will be denied.

<u>10. Video and Audio Surveillance of the arrest of Youa True Vang.</u>

In responding to this request, the government has represented that the agents executing the arrest of defendant Youa True Vang and the search of his residence did take a "before and after" videotape of the scene to protect against any claim that they had damaged property.  The government also represents that there was no videotaped interview of the defendant made at that time.  Finally,

---

[16] The government states that some interpreters have expressed a hesitancy or unwillingness to provide services in connection with this case due to concerns regarding harassment.  The court gives no weight to the purported expression of such general and unsupported concerns in ruling on this motion.

the government reports that despite a diligent search, the "before and after" videotape of the scene cannot be located and the government believes it was most likely recorded over inadvertently. Based upon the government's response, defendants seek a "full evidentiary hearing" into the spoliation of this videotape evidence as well as the "potential" spoliation of other evidence.

Defendants' have failed to adequately support their request for an evidentiary hearing. There is nothing before the court to even vaguely suggest the deliberate destruction of evidence here or to justify further inquiry into the inadvertent loss of the "before and after" videotape in question. Accordingly, defendants' motion in this regard is denied.

13. Documents Referring to Assassination attempts in the last ten years against General Vang Pao or any of the Hmong defendants including any attempt by the Government of Laos.

The government responded to this request by representing that it has conducted a search of the files of its agencies and found no document referencing assassination attempts against defendant Vang Pao in the past ten years and that it is unaware of any such attempts against him. The defense has represented that prior to their arrest in this case defendant Youa True Vang and perhaps other defendants were advised by government agents that they had been targeted for assassination.

This requested discovery appears clearly directed at information material to the preparation of the defense and may have relevance to the defendants' state of mind and other disputed issues

at trial.  The government's response is adequate only as to defendant General Vang Pao.  Accordingly, the government will be ordered to conduct the same search of the files of its agencies with respect to the other Hmong defendants and within sixty days of the date of this order shall notify the court whether any such documents have been discovered and whether security clearances or further orders by the court will be necessary prior to production of such discovery to the defense.

    15.  Documents regarding the government's investigation of the so-called "Neo Hom" in the last ten years.

The government opposes this request on the grounds that such information is irrelevant, immaterial and that it would be unduly burdensome to search for and produce.  Defendants contend that during the course of the investigation the undercover ATF agent referred to the defendants as members of the "Neo Hom."[17]  From there, the defendants leap to the conclusion that they are entitled to all documents reflecting government investigation of the "Neo Hom" over the past ten years.

The government's objection to this discovery request is well-taken.  The defendants have failed to make a prima facie showing of materiality.  Moreover they have not established that they are entitled to such discovery under the law.  Accordingly, this request

/////

/////

---

[17] Defendants inaccurately argue that they are "charged" with being part of the "Neo Hom."  The indictment in the case, however, does not appear to contain this moniker.

for discovery will be denied.[18]

## 16. All documents given to the ATF agent by any defendant.

The government objected to this discovery request on the grounds that it was overbroad, overly inclusive, and called for irrelevant information, production of which would implicate various government privileges.

The court believes that the government misread this discovery request. It seeks only all documents given to the undercover ATF agent by any defendant. Such documents are obviously material to the preparation of the defense and must be produced pursuant to Rule 16(a)(1)(E). Accordingly, this discovery request is granted and the government shall provide this discovery to the defendants forthwith.

## 17. Documents sent to or received by any person or agency concerning any document given to the ATF agent by any defendant.

The government objects to this request on all the same grounds stated above with respect to No. 16. The court finds this discovery request confusing. In any event, it would appear on its face to call for the production of work product. Absent a showing of materiality, the request will be denied.

## Government's Request for Reciprocal Discovery.

In its opposition to defendants' motion for discovery the government purported to present a cross-motion seeking reciprocal discovery under Rules 12 (waiver of defense, objection, etc.), 12.1

---

[18] It is possible that the government's definition of the moniker "Neo Hom" used by the undercover agent may be the appropriate subject of inquiry by way of a bill of particulars.

34

(notice of alibi), 12.2 (notice of insanity defense), 16(b)(reciprocal discovery), and 26(a).[19]  Defendants reply that the "cross-motion" is procedurally defective because the government has not met and conferred with the defendants regarding its requests and did not properly file a noticed motion for discovery.  In addition, defendants contend that the government's request is unsupported, premature in any event, and that defendants will comply with their discovery obligations at the appropriate time.

While technically perhaps not properly noticed for hearing, such reciprocal discovery requests are often presented by the government in response to discovery motions brought by the defense. The government is no doubt entitled to timely reciprocal discovery in this complex case to some degree.  However, given the wide-ranging nature of the government's request, if the parties cannot reach an agreement, the court desires full briefing with respect to the discovery issues that remain in dispute.  Therefore, the government's "cross-motion" for discovery will be denied without prejudice to the filing of a properly noticed and briefed motion for discovery.

CONCLUSION

Accordingly, IT IS HEREBY ORDERED that the defendants' motion for an order compelling discovery under Rule 16 and <u>Brady</u> (Doc.

/////

/////

/////

---

[19]  It is unclear what the government is referring to with respect to this last request.

No. 329) is granted in part and denied in part as set forth in detail above.

DATED: May 9, 2009.

DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

jack0266.Rule16